UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| OPTIONS HOME HEALTH OF | ) | |
| NORTH FLORIDA, INC., | ) | |
| BRIAN VIRGO, and | ) | |
| JOSH GOODE, | ) | |
| | ) | |
|    Plaintiffs, | ) | Action No. 5:11-CV-166-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| NURSES REGISTRY AND | ) | **MEMORANDUM OPINION AND ORDER** |
| HOME HEALTH CORPORATION, | ) | |
| | ) | |
|    Defendant. | ) | |
| | ) | |
| | ) | |

** ** ** ** **

This matter is before the Court on a Motion to Dismiss [Record No. 7] filed by Defendants Nurses Registry and Home Health Corporation ("Nurses Registry").[1]  Plaintiffs have filed a Response [Record No. 30] and Defendant has Replied [Record No. 42].  This matter is now ripe for review.

This dispute centers on Nurses Registry's purchase of the assets of Plaintiff Options Home Health of North

_____

[1]  A Motion to Dismiss [Record No. 15] was also filed regarding the claims against Defendant Lennie House.  He was subsequently dismissed from the case by virtue of this Court's August 25, 2011 Order [Record No. 33].  Accordingly, that Motion to Dismiss [Record No. 15] is denied as moot.

1

Florida, Inc. ("Options") and the effect of a change in the law prohibiting the transfer of Options' existing Medicare License on the parties' agreement.  Plaintiffs claim that Nurses Registry breached the contract for the purchase of Options and that Nurses Registry has been unjustly enriched because it has had the use and benefit of Options' assets since August 25, 2009 without full compensation, the benefits of Josh Goode's services without full compensation and Nurses Registry has received payments from Medicare by using Options' Medicare license, which Medicare is now trying to recover from Options.[2]

### Statement of Facts

Plaintiffs Virgo and Goode founded Options, a Florida company engaged in providing home health care services, such as minor medical care, bathing, toileting, feeding, housekeeping, meal preparation and transportation.  In June, 2009, Options and Nurses Registry entered into an asset purchase agreement (the "APA") providing for the sale of essentially all of Options' assets for a price of

---

[2]   Plaintiffs agreed to dismiss the following claims against Nurses Registry, as indicated in the August 25, 2011 Order [Record No. 33]: Counts III, injunctive relief regarding funds to be placed in escrow; Count IV, conversion; and Count V, punitive damages.

$650,000.[3]   The assets covered by the agreement included Options' tangible personal property, contracts, inventory and work-in-process, books and records, goodwill, intellectual property, licenses, certain insurance proceeds, intangible assets, claims and defenses, and leased personal property, as set forth in the APA and certain schedules thereto.   The APA provided that the closing would occur on the later date of August 25, 2009, or on the date at which all of the contingencies set forth in the APA were met, whichever occurred later.

According to the Complaint, the "transactions contemplated by the APA closed on or about August 29, 2009, but except for the $100,000 paid to Options pursuant to the Escrow Agreement, the remaining balance of the Purchase Price remained unpaid." [Complaint, ¶ 16.]

The Trust Agreement, which was part of the APA, provided that Josh Goode, a plaintiff and founder of Options, would remain employed as the acting DON/Administrator for a certain time period. [Exhibit 1 to

---

[3]   Nurses Registry contends that the two parties executed two separate versions of the APA.   Options states that it was not aware of the two separate versions of the APA until Nurses Registry filed a copy of the separate document along with its Motion to Dismiss.   Regardless, as discussed below, the Court excludes consideration, at this stage, of the version executed by Nurses Registry on June 30, 2009, because it was not part of the pleadings.

Complaint.] The Trust Agreement provided that upon Goode's termination from employment, Options was to be paid $75,000, which was being held in trust by Nurses Registry. Nurses Registry terminated Goode's employment on or about October 22, 2009. However, Options alleges that Nurses Registry failed to make the payment pursuant to the Trust Agreement and APA. [Complaint, ¶ 17]

Options and Nurses Registry executed a "Closing Statement" in February 2010, which was not explicitly contemplated by the APA. Options avers that Nurses Registry indicated that if its "demand for the Closing Statement was not met, it would not pay the $75,000 it owed to Options under the Trust Agreement." [Complaint, ¶ 18.] The effective date of the Closing Statement was August 29, 2009, as that was the date on which the asset purchase transaction had occurred.

The Closing Statement identified one remaining condition to be fulfilled before Nurses Registry would be required to deliver the remaining Purchase Price to Options: "that 'Section 5.1 of the [APA] requires the State of Florida to issue a license to [Nurses Registry] before the remaining Purchase Price set forth in Section 2.5 of the [APA] is to be paid.'" [Complaint, ¶ 20.] The APA itself specifically provides in Section 2.5(p) that:

> Seller shall have been issued any and all
> licenses, permits and governmental certificates
> and approvals necessary to conduct business as a
> Home Health Agency in the State of Florida,
> including, but not limited to, those licenses,
> permits and governmental certificates and
> approvals contained on Schedule 5.1(p)...

The parties further acknowledged "the issuance of the Medicare License is a prerequisite and condition to the duty of [Nurses Registry] to pay the Purchase Price set forth in this Settlement Statement." [Complaint, ¶ 20.] The Closing Statement provided that the closing would be "void ab initio" and the Purchase Price returned to Nurses Registry "if the Medicare License is not issued to [Nurses Registry] for any reason not within the control of the [Nurses Registry] …" [Complaint, ¶ 24.]

The controversy between the parties centers around the transferability of Options' Medicare License.   To transfer the license from Options, Nurses Registry filed an Application for a "Change in Ownership."   While the Change of Ownership application was pending, changes were made to federal law, which allegedly prevented Nurses Registry from obtaining a transfer of the Medicare license under which Options previously provided services.   According to the Complaint, Nurses Registry became aware on or before May 11, 2010 that the Options' Medicare license was not

5

eligible for transfer to Nurses Registry due to the change in the law and that it would therefore have to apply for a new Medicare license number. Unless the new Medicare license number had a retroactive effective date, Nurses Registry's ability to bill for Medicare services provided before the new license was issued became questionable. However, according to Options, Nurses Registry continued to bill Medicare during this time by using Options' license number. [Complaint, ¶ 28.]

After learning that the Medicare license might not be eligible for transfer under the new laws, Nurses Registry sent a letter on May 18, 2010, to Options "stating that [the Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS")] had refused to approve 'the Medicare component of the license' thereby 'terminat[ing] the Buyer's duty to pay any of the Purchase Price.'" [Complaint, ¶ 29.] The Complaint alleges that "Nurses Registry did not take any steps to void or rescind the transaction and continued to conduct business with the Purchased Assets." [Complaint, ¶ 29.] CMS issued a final determination on or about November 5, 2010, confirming that Options' license was not eligible for transfer to Nurses Registry under the new law. [Complaint, ¶ 32.]

While waiting on CMS' determination of whether the Options' license could be conveyed to Nurses Registry, Nurses Registry pursued a new license.  In May, 2010, Nurses Registry filed an enrollment application with CMS for a new license.  [Complaint, ¶ 30.]  Nurses Registry received notice on or about July 31 2010, that the Enrollment Application had been processed and a site survey would be conducted by the State Survey Agency or accrediting organization to ensure compliance with the conditions for participation in Medicare by a home health agency.  [Complaint, ¶ 30.]  On or about February 23, 2011, Nurses Registry received its Medicare License as a new provider.  [Complaint, ¶ 34.]  Although Nurses Registry was not able to obtain Options' Medicare license, Nurses Registry was not precluded from obtaining a license altogether. However, according to Options, Nurses Registry could only bill for services provided after the effective date of the Joint Commission survey, February 23, 2011, rather than an earlier date based on the Options' license which was already in effect.  As stated in the Complaint, "Medicare often makes an advance payment for services provided by a [Home Health Agency] and may seek claw back or offset those payments at a later time if a reimbursement is later disallowed."  [Complaint, ¶ 42.]  Accordingly,

certain reimbursements to Nurses Registry were later disallowed. Because those services were provided under Options' provider number, however, CMS demanded refund of those payments. The requests for repayment were, allegedly, initially ignored by Nurses Registry. However, on or about March 31, 2011, Nurses Registry forwarded the accumulated demand letters and delinquent notices to counsel for Options. CMS seeks to recover more than $80,000 from Options, which, Options argues, CMS will forward to the Department of Treasury's Debt Collection Center ("DCC"), if not paid promptly. The DCC can collect from other entities in which Virgo and Goode have an ownership interest, thereby causing harm to these Plaintiffs for which there is no adequate remedy at law.

According to the Complaint, Nurses Registry has neither paid the Purchase Price, nor has it given notice that it deems the closing void *ab initio*. Instead, Nurses Registry has continued to use the assets since the closing date.

Nurses Registry admits that it did not comply with its obligations under the APA and Closing Agreement, specifically that it did not pay Plaintiff Josh Goode the agreed upon sum upon his termination, and that it has not paid the remainder of the purchase price under the

agreement. Nurses Registry does not address the allegations regarding Medicare overpayments in its arguments before this Court directly, instead it argues that it was not able to receive Medicare payments because Nurses Registry did not acquire Options' license. Nurses Registry argues that because it was impossible to obtain the Options' Medicare license, it was not obligated to comply with the provisions contained in the agreement.

### Standard of Law

Nurses Registry filed the current motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), but attached as exhibits a number of items that are not formally part of the pleadings in this matter. Thus, the question becomes whether this motion should be treated as one for summary judgment under Fed. R. Civ. P. 56. Rule 12(d) provides that if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The obligation to convert to a summary judgment motion is mandatory if matters outside the pleadings are not excluded by the Court. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.,* 452 F.3d 494, 503 (6th Cir. 2006) (applying Rule 12

(d) to a Rule 12(c) motion). "A district court's decision to exclude such materials should be explicit." *Ennis v. Wells Fargo Bank, N.A.*, 2011 WL 1118669, *2 (W.D. Mich. March 25, 2011) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 n.1 (6th Cir. 2009)). However, a court may consider matters outside of the pleadings without converting to a Rule 56 motion if the documents - in this case, exhibits attached to Defendant's motion to dismiss - are "referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Plaintiffs argue, and this Court agrees, that it would be unfair to convert this to a summary judgment motion in this circumstance. No discovery has occurred to date. Defendant filed correspondence and affidavits as exhibits, and Plaintiffs have not had the opportunity to counter the allegations contained therein through discovery or otherwise. Considering the defenses asserted, converting the motion to a summary judgment motion, providing notice to the parties of this intent and forcing the Plaintiffs to file evidence opposing the motion at this stage would be inefficient and unreasonable. See *Yorkavitz v. Grand River Acad.,* 2010 WL 2195650 (N.D. Ohio May 28, 2010); *Clark Motor Co. v. Mfrs. & Traders Trust, Co.,* 2007 WL 2155528

(M.D. Pa. July 26, 2007); *Black v. Franklin Cty, Ky.,* 2005 WL 1993445, *2 (E.D. Ky Aug. 16, 2008). Moreover, opening the matter for discovery prior to ruling on the motion would not be any more efficient than allowing discovery to proceed in due course and allowing the parties the opportunity to file their summary judgment arguments after discovery has taken place and all of the relevant evidence may be brought to light.

Accordingly, this Court shall review the sufficiency of the Complaint and consider the Asset Purchase Agreement executed by Options on June 30, 2009, the Closing Statement, and the May 18, 2010 letter from counsel for Nurses Registry to counsel for Options, which was referenced in the Complaint. In considering the pending Motion to Dismiss, the Court shall exclude the remaining exhibits attached to Defendant's motion, including several items of correspondence, the APA executed by Nurses Registry,[4] and Craig Carter's Affidavit, as well as Craig

---

[4]   Nurses Registry contends that it signed a separate version of the APA on or about June 30, 2009. Options contends, however, that it was unaware of this separate agreement until after the Complaint was filed. Considering the posture of the instant motion, any argument related to this separate agreement may be raised by the parties at a later date in an appropriate motion.

Carter's Supplemental Affidavit and the exhibits attached thereto.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a plaintiff's complaint. The Court views the complaint in the light most favorable to the plaintiff and "[f]actual allegations must be enough to raise a right to relief above the speculative level... on the assumption that all the allegations in the complaint are true." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007).

With respect to the averments set forth in Plaintiffs' Complaint, the Court accepts Plaintiffs' averments as true for the purposes of evaluating Defendant's Motion to Dismiss. "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir. 1997). If it appears beyond doubt that the plaintiffs' complaint does not state facts sufficient to "state a claim that is plausible on its face," then the claims must be dismissed. *Twombly,* 550 U.S. at 570; *Weisbarth v. Geauga Park Dist*., 499 F.3d 538, 541-42 (6th Cir. 2007); *Our Lady of Bellefonte Hospital, Inc. v. Tri-State Physicians Network, Inc*., 2007 WL 2903231, *2 (E.D.

Ky. Sept. 27, 2007). The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible. *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

### Analysis

Defendant argues that because Options' license could not be transferred to Nurses Registry after the change in the law, the entire contract became null and void on grounds of legal impossibility, mutual mistake and non-performance of a condition precedent. However, these three arguments rest on the foundational tenet that the APA and Closing Agreement required the specific transfer of Options' Medicare license and could not be satisfied by the issuance of a new Medicare license to Nurses Registry. The Court cannot draw that conclusion from the materials before it at this time. In fact, the Court must view the well-pleaded facts in the Complaint as true at this juncture and, in doing so, this Court must reject Defendant's argument that the agreement between the parties was voided.

The plain language of the APA and Closing Agreement suggests that the issuance of a Medicare License to Nurses

Registry in Florida, whether a new license or Options' transferred license, fulfills the requirements for the parties, and therefore triggers Defendant's obligations under the contract as agreed. The APA defines "Licenses" as "all licenses, permits, certificates of authority authorizations, approvals, registrations, franchises, Environmental Permits and similar consents granted or issued by any Person and associated with or related to the Purchased Assets." The APA provides, along with the itemization of all other purchased assets, that "All Licenses" are to be transferred. [APA, Section 2.1.] Later, in Section 5.1, "Conditions to the Obligations of the Buyer to Close," the APA provides that "Seller shall have been issued any and all licenses, permits and governmental certificates necessary to conduct business as a Home Health Agency in the State of Florida…" [APA, Section 5.1(p).] However, Options' Medicare license is not specifically listed, defined or otherwise referred to in the APA outside of the global references therein.

The Closing Statement provided that "the issuance of the Medicare License is a prerequisite and condition to the duty of [Nurses Registry] to pay the Purchase Price set forth in this Settlement Statement." [Complaint, ¶ 20; Closing Statement.] The Closing Statement further provided

14

that the closing would be "void ab initio" and the Purchase Price returned to Nurses Registry "if the Medicare License is not issued to [Nurses Registry] for any reason not within the control of the [Nurses Registry]…" [Complaint, ¶ 24; Closing Statement, Section 2.] Earlier in the Closing Statement, it states that Section 5.1 of the APA "requires the State of Florida to issue a license to the Seller…" Even the Closing Statement, on which Nurses Registry heavily relies, defines license to mean Options' Medicare license only.

     At this point of the litigation, based on the facts before it, the Court cannot agree that the language in the APA and Closing Agreement explicitly requires Options' license to be transferred for the parties to be bound by the agreement, as Defendant argues.  Plaintiffs allege that Defendant was issued a Medicare license on or about February 23, 2011.  Therefore, Defendant's arguments that the contract is void must fail.  Assuming that Nurses Registry's Medicare license has been issued, then all relevant conditions spelled out in the APA and Closing Statement have been met and the Complaint cannot be dismissed on grounds of legal impossibility, mutual mistake and non-performance of a condition precedent.

Defendant also argues, in the alternative, that each party executed a different version of the APA, a fact that was allegedly unknown to Plaintiffs until the filing of the Motion to Dismiss. Defendant argues that there was never a meeting of the minds between the parties. The Court has determined to exclude the Nurses Registry version of the APA, executed on or about June 30, 2009, for purposes of this motion. Accordingly, the Court declines to consider these arguments, although the defendant is free to raise this issue at a later time.

The Court now turns to the sufficiency of Plaintiffs' individual claims. With the understanding that a Medicare License has been issued to Nurses Registry, the Court will not dismiss the remaining claims.

**<u>Breach of Contract Claim</u>**

To state a claim for breach of contract, "Kentucky law has long been clear that [the complaint] must state 'the contract, the breach and the facts which show the loss or damage by reason of the breach.'" *Shane v. Bunzl Distribution USA, Inc.,* 275 F. App'x 535, 538 (6th Cir. 2008) (unpublished decision) (quoting *Fannin v. Commercial Credit Corp.,* 249 S.W.2d 826, 827 (Ky. 1952)). In other words, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) breach of the

contract; and (3) damages or loss to Plaintiff. *Metro Louisville/Jefferson Cty Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky.App. 2009); *Summit Petroleum Corp. of Indiana v. Ingersoll-Rand Financial Corp.*, 909 F.2d 862, 868 (6th Cir. 1990). The Complaint herein clearly details the contract, the APA and Closing Statement, and sets forth the obligations which Nurses Registry allegedly failed to meet. Specifically, Nurses Registry failed to pay the balance of the purchase price, $550,000, once a Medicare License issued to Nurses Registry on February 23, 2011. Additionally, Nurses Registry failed to pay Options the agreed upon sum of $75,000 upon the termination of Josh Goode. Nurses Registry admits its failure to pay both of these sums. Moreover, the Complaint discusses the financial damage caused by the breach. These facts as alleged in the Complaint, if accepted as true, present an actionable claim upon which Options could recover for breach of contract.

Nurses Registry argues that because Options' license cannot be transferred to Nurses Registry that the agreement is void and, therefore, Nurses Registry did not have an obligation to follow through on the obligations set forth in the APA and Closing Statement. Nurses Registry makes this argument with respect to the $75,000 due at the

17

termination of Josh Goode, and with respect to the remainder of the purchase price, notwithstanding the fact that Josh Goode was terminated prior to the change in the law which rendered the Options' license non-transferable. Nonetheless, the Complaint asserts that Nurses Registry has, in fact, received a Medicare license and, accordingly, all of the conditions precedent have been met.  While the Court understands the defendant's argument that the APA and closing statement were referring to the sale of Options' Medicare License, the Court is not willing or able to draw that conclusion from the information available to it on this motion to dismiss.  Plaintiffs' Complaint pleads sufficient factual matter to render the legal claim plausible and, at this stage, it survives Defendant's motion to dismiss.

**<u>Unjust Enrichment</u>**

A valid claim for unjust enrichment must demonstrate "three elements: (1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky.App. 2009) (citing *Guarantee v. Big Rivers Electric Corp.,* 669 F.Supp. 1371, 1380-81 (W.D.Ky 1987)).

Plaintiffs' Complaint alleges three separate benefits enjoyed by Nurses Registry at Plaintiffs' expense: (1) Nurses Registry has enjoyed the use of Options' assets while it operated, and continues to operate business, in Florida since the date of the closing, August 29, 2009; (2) Plaintiff Goode provided valuable services during the time following the closing until his termination on October 22, 2009, for which he was not compensated as agreed; and (3) Medicare made advance payments to Nurses Registry under Options' license, and now that the license has not been transferred, CMS is attempting to recoup the payments made from Options, rather than Nurses Registry. Nurses Registry has been billing Medicare under Options' license number before the application for Change of Ownership was filed and while it was pending. However, Nurses Registry has allegedly not repaid any of the monies received while billing under that license.

Defendant briefly argues that it was not enriched because it did not receive Options' license. However, the allegations in the Complaint, if true, may set forth a valid claim for unjust enrichment. Although, ultimately, it may be determined that the allegations of an explicit contract regarding the sale of Options' assets and Goode's employment preclude this claim on those grounds, *Sparks*

*Milling Co. v. Powell,* 143 S.W.2d 75 (Ky. 1940), the factual allegations regarding the Medicare overpayments would be sufficient for an unjust enrichment claim under Kentucky law.   The benefits described by Options were, if Options' allegations are true, conferred on Nurses Registry to its benefit at Options' expense and inequitably retained without payment.   Accordingly, this claim survives Defendant's motion to dismiss.

### Injunctive Relief

Defendant only offers a cursory argument regarding Plaintiffs' claims for injunctive relief, arguing that because Nurses Registry was not issued Options' license, it cannot bill Medicare for services rendered in Florida and, therefore, injunctive relief is improper.   However, Defendant does not address the allegation that Nurses Registry billed and received payment for services performed after the closing date and before the denial of the Application for Change in Ownership, or the allegation that CMS is seeking to recover those overpayments.   Defendant has not demonstrated that the facts as alleged in the Complaint do not qualify for injunctive relief and, therefore, the motion to dismiss will be denied in this respect.

<u>**Conclusion**</u>

For the foregoing reasons, **IT IS ORDERED** that Motion to Dismiss [Record No. 7] filed by Defendant Nurses Registry and Home Health Corporation is **DENIED.** Moreover, the Motion to Dismiss filed by Lennie House [Record No. 15] is **DENIED AS MOOT.**

This the 9th day of February, 2012.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge