```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                     CENTRAL DIVISION at LEXINGTON


OPTIONS HOME HEALTH OF        )
NORTH FLORIDA, INC.,          )
BRIAN VIRGO, and              )
JOSH GOODE,                   )
                              )
     Plaintiffs,              )     Civil Action No.
                              )     5:11-cv-166-JMH
v.                            )
                              )
NURSES REGISTRY AND           )     MEMORANDUM OPINION & ORDER
HOME HEALTH CORPORATION,      )
                              )
     Defendant.               )
```

                    **  **  **  **  **

This matter is before the Court on Defendant's Motions to reconsider [D.E. 118, 119] the May 6, 2013 Memorandum Opinion and Order [D.E. 111] addressing the parties' cross-motions for summary judgment. Plaintiff has responded [D.E. 120, 121] and Defendant has timely replied [D.E. 122, 123], pursuant to this Court's briefing schedule [D.E. 117]. Thus, these motions are now ripe for review.

As described more fully below, Defendant's Motion to Reconsider the Court's Use of the Term "Unnecessary Services" [D.E. 118] will be granted, and Defendant's Motion to Reconsider Various Rulings [D.E. 119] will be granted in part and denied in part. As a result of these

1

rulings, the Court shall file, contemporaneously herewith, an Amended Memorandum Opinion and Order amending its May 6, 2013 Memorandum Opinion and Order [D.E. 111].

## STANDARD OF REVIEW

"[C]ourts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare,* 89 Fed. App'x. 949, 959 (6th Cir. 2004)). The motion does not serve as "an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Accordingly, a party should not use this motion "to raise arguments which could, and should, have been made before judgment issued." *Id*. (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).

## ANALYSIS

**I. Nurses Registry's request for reconsideration and correction of the $75,000 payment.**

In its motion, Defendant points out that the Court mistakenly noted in a footnote that Plaintiff Goode was entitled to receive a $65,000 salary in addition to a

$75,000 severance payment upon his departure. [D.E. 111 at 3]. Defendant notes that, under the APA, the $75,000 was classified as part of the purchase price, and was payable to Options, not Goode individually. [D.E. 119 at 2]. Specifically, the APA states that "Buyer shall pay to Seller the remaining Seventy-Five Thousand and 00/100 Dollars ($75,000.00) upon the discharge of Joshua Goode from the Buyer's employment." [D.E. 119 at 2].

The Court agrees that it made a mistake when it stated that the $75,000 was payable directly to Goode; indeed, under the APA, the $75,000 was payable to the Seller, which, in the APA, is defined as Options. [D.E. 101-1 at 2]. Accordingly, the language in the Amended Memorandum Opinion and Order has been modified to reflect this change pursuant to Federal Rule of Civil Procedure 60(a), which allows a court to correct a mistake that arises from "oversight or omission." Fed. R. Civ. P. 60(a).

However, this change does not affect the Court's analysis in the slightest. The Court never made a determination in its Opinion that Defendant was obligated to pay $75,000 to Plaintiff Goode. Rather, because Plaintiffs originally included Defendant's failure to pay the $75,000 as grounds for their unjust enrichment claim in their Complaint [D.E. 1 at 13], and because the parties

3

consistently represented throughout their briefs that this $75,000 was a "severance fee" owed upon Goode's departure,[1] the Court pondered whether the $75,000, in addition to the $65,000 salary, was the amount originally estimated by the parties to be the reasonable value of Goode's services. However, the Court made no concrete determination as to the reasonable value of Goode's services, as this is an issue that remains for trial. In fact, the Court explicitly pointed out in its Opinion that if the $75,000 does not represent the reasonable value of Goode's services, then Plaintiffs will not be entitled to recover it. [D.E. 111 at 25—26]. Accordingly, Defendant's motion to reconsider this issue is denied.

**II. Nurses Registry's request for reconsideration and correction of the denial of Defendant's Motion to Amend and granting of summary judgment on Counts II & III of the counterclaim.**

This Court relied, in part, on the fact that the parties had not entered into the APA as of July 1, 2009, in its decision to deny Defendant leave to amend its counterclaim. [D.E. 111 at 13]. Defendant helpfully points out that this Court misspoke. In fact, as the Court had previously, correctly noted elsewhere in the record,

---

[1] For example, in Defendant's statement of the facts, it noted that the $75,000 would be paid as a "severance fee" upon Nurses Registry's termination of the employment of Mr. Goode. [D.E. 78-2 at 3].

4

the parties entered into the APA in June 2009 but set other events in the transaction for after July 1, 2009. [D.E. 50 at 2-3; D.E. 111 at 2]. As a mistake resulting from oversight or omission, the Court has the authority to correct this language under Fed. R. Civ. P. 60(a), and will do so in its Amended Memorandum Opinion and Order.

Defendant also requests that this Court reconsider its denial of leave to amend the counterclaim in light of this corrected statement—a request which this Court hereby grants. However, upon reconsideration, Defendant's request to amend the counterclaim is still denied. The timing of the APA was but one factor originally considered by this Court in its denial of the amendment to the counterclaim. The remaining grounds for its decision—specifically, that no good cause for delay was demonstrated, that the amendment would be prejudicial, and that the amendment was futile as a matter of law based on Defendant's failure to show justifiable reliance—still apply. Thus, the above-referenced correction does not alter this Court's decision to deny Defendant leave to amend the counterclaim, as evidenced by this Court's analysis in the Amended Memorandum Opinion and Order, entered this date.

Defendant further requests that this Court reconsider its decision to grant Plaintiffs summary judgment on the

5

counterclaim. Because the correction noted above does not alter this Court's decision to deny leave to amend the counterclaim, and because the Court did not rely on the timing of the APA in its analysis of summary judgment on the counterclaim, the Court sees no reason to reconsider that portion of its decision, and Defendant's request is denied.

### III. Nurses Registry's request for reconsideration of the Court's ruling that Nurses Registry has been unjustly enriched relating to the purchase of Options.

In the motion for reconsideration, Defendant seizes upon the opportunity to essentially reargue the merits of its summary judgment motion. Such grounds do not merit reconsideration. *See Engler*, 146 F.3d at 374.

First, Defendant reminds this Court that the Closing Statement provided that, if the Medicare license was not issued to Defendant, that the "'*closing*' is *void ab initio*." [D.E. 119 at 5; D.E. 123 at 2]. Defendant takes umbrage with the Court's determination that the transaction, rather than merely the closing[2], is void *ab*

---

[2] The term "closing" is not defined within the Closing Statement. [D.E. 100-4; 101-7]. In the APA, the term "closing" is referenced in Section 1.2 "Other Defined Terms" with a reference to Section 2.7, but, again, there is no meaningful definition for purposes of Defendant's argument. [D.E. 100-1; 101-1].

6

*initio*.³  This is a distinction without a difference. Agreements that are void *ab initio* "are agreements that never existed." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383 F.3d 512, 520 (6th Cir. 2004). In Black's Law Dictionary, "[v]oid *ab initio* is defined as null from the beginning, as from the first moment when a contract is entered into." *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 2013 WL 1442263, *4 n.6 (6th Cir. April 10, 2013)(internal quotations omitted)(quoting *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 825 N.W.2d 329, 330 n.2 (2012)); Black's Law Dictionary 1709 (9th Ed. 2009)). When these definitions of this term of art are considered, it is clear that, contrary to Defendant's argument, one segment of a transaction cannot, alone, be void *ab initio*.

Defendant reasons that, because only the closing is void *ab initio* and no other part of the transaction is affected, a "contract exists and covers the same subject matter as to which the plaintiffs seek to impose an implied contract" so that unjust enrichment is not available. [D.E. 119 at 6]. Defendant contends that the contract

---

³ The Court notes that it was Nurses Registry that drafted the Closing Statement and, therefore, chose the term of art "void *ab initio*" to describe the impact of the failed transfer of the Medicare license of the transaction. [D.E. 81-1 at 4, ¶ 16; D.E. 85-1 at 2, ¶ 16].

7

language requires that the $80,000 already paid to Options be returned to Defendant, and insists that it is relieved of its obligation to pay the remaining $550,000 purchase price. [D.E. 119 at 5-6]. Defendant illogically argues, however, that it remains entitled to the tangible and intangible assets previously transferred from Options because "[t]here is no provision for any return of assets or additional compensation to Options" in the contract terms.[4] [D.E. 119 at 5-6]. In fact, Nurses Registry has maintained that this should be the result of this case throughout litigation, even while arguing that the contract should be rescinded and/or declared null and void due to legal impossibility, failure of a condition precedent and/or mutual mistake. [D.E. 78 at 6-13]. In other words, Defendant has consistently maintained that the contract is void for various reasons, while simultaneously insisting

---

[4] The Court notes that even if it agreed with Defendant's entire argument, the fact that the contract is silent about the return of the assets to Options suggests that unjust enrichment would still apply to this matter. Regardless of the many and varied arguments made by Nurses Registry, the fact remains the continued retention and enjoyment of Options' tangible and intangible assets without any payment for value satisfies the requirements of unjust enrichment under Kentucky law. *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009). Assuming Defendant's argument to be true, the fact that the parties did not negotiate for the fate of those assets in the Closing Statement means that there is not an express contract between the parties on the issue. *Fruit Growers Exp. Co. v. Citizens Ice & Fuel Co.*, 112 S.W.2d 54, 56 (Ky. 1937).

8

that the contract terms (in the void contract) dictate the outcome.

Defendant's argument lacks merit. First, by virtue of Defendant's arguments, it is obviously still refusing to acknowledge that, under the terms of the Closing Statement that Defendant personally chose, the contract is void *ab initio*; as discussed, a contract that has been deemed void *ab initio* no longer exists.[5] [D.E. 81-1 at 4, ¶ 16; D.E. 85-1 at 2, ¶ 16]. Therefore, because the contract is no longer valid, its terms cannot apply to bar the application of unjust enrichment. Instead, it is commonly accepted by courts that where a contract has been partially performed and is found to be void *ab initio*, unjust enrichment is the appropriate remedy. *See United States v. Amdahl Corp.*, 786 F.3d 387, 395 (Fed. Cir. 1986). As there is no longer a valid contract, the authority cited by Defendant, namely *Fruit Growers Exp. Co. v. Citizens Ice & Fuel Co.*, 112 S.W.2d 54, 56 (Ky. 1937); *Holmes v. Countrywide Fin. Corp.*, No. 5:08-CV-00205-R, 2012 WL 2873892 at *12 (W.D. Ky. July

---

[5] As noted by Supreme Court Justice Scalia, "[t]here's no such thing as a contract that is void ab initio." Transcript of Oral Argument at 56, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) (No. 04-1264) (available at http://www.supremecourt.gov/oral_arguments/argument_transcripts.aspx)

9

12, 2012), does not apply. Accordingly, the Court declines to revisit its prior ruling on this issue.

> **IV. Nurses Registry's request for reconsideration of the Court's ruling that Nurses Registry has been unjustly enriched relating to the Medicare reimbursement requests.**

In its motion to reconsider, Defendant reiterates that the Court erred by noting that the Medicare reimbursement requests from CMS resulted from "unnecessary services" provided by Nurses Registry. [D.E. 119 at 7]. Accordingly, it argues that because it performed *necessary* medical services, it is entitled to keep the value of the initial Medicare payments paid to CMS, and has not been unjustly enriched from retaining these payments. [D.E. 119 at 7–8]. The implication underlying Defendant's argument is that because Defendant appropriately billed the original Medicare services under Options' provider number, it should not be required to pay back the overpayments sought by CMS simply because CMS will not accept a final bill.[6]

First, however, Defendant misinterprets the Court's opinion. The fact that the Court noted that the original services were "unnecessary" was indeed an oversight, but it

---

[6] Because the CMS collection letters remain silent on the issue of why CMS seeks to recover the overpayments, the Court does not take a position on the reasons behind CMS's actions. However, for the purposes of this case, the parties appear to be an agreement that this is what happened.

10

was not an oversight that affected the analysis. Rather, the only relevant undisputed facts to this Court's determination that Defendant was unjustly enriched with regard to the Medicare overpayments is that Defendant billed Medicare using Options' provider number, received the initial payments from Medicare for those services, and now refuses to pay CMS for the overpayments connected with those services. [D.E. 1 at 10; D.E. 56 at 6; D.E. 83-1 at 4]. It is from these facts that the Court concluded that Defendant extracted benefits from Plaintiffs that they have not been compensated for. Specifically, Plaintiffs have not been compensated for the temporary use of their Medicare provider number, which constitutes a benefit conferred on Defendant since, without use of this number, it "would have been completely unable to earn income during that time," and, thus, never would have earned the money that it now seeks to retain. [D.E. 111 at 26]. Further, Defendant's adamant insistence that it is entitled to keep the original CMS payments, but does not have to pay the liabilities associated with these exact funds, also operates as a benefit because it "is retaining money that it otherwise would have had to pay back to CMS if Defendant had been operating under its own billing number." [D.E. 111 at 27].

11

In its Opinion, the Court did not address Defendant's present argument in the motion to reconsider. Upon review of the record, the Court's failure to address this argument was not an omission, as it does not appear that Defendant made this argument to the Court until now. If this is indeed the case, then the Court does not need to address it since parties "cannot use a motion for reconsideration to raise new legal arguments." *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007).

However, even if some portion of Defendant's briefs addressed to this Court could be construed as raising such an argument, the Court would not have jurisdiction to resolve it. Rather, the issue that Defendant now raises—-specifically, whether it should be forced to reimburse CMS for overpayments when 1) it actually performed those necessary services, and 2) the only reason it cannot prove to CMS that it did so is because CMS will not allow them to prove it by submitting a final bill—is an argument that Defendant has against CMS, a non-party to this action.[7] The

---

[7] Defendant speculated about the existence of this defense against CMS in one of its briefs, noting that if the Court issued an injunction against it, it would "deprive Nurses Registry of its right to defend against such future action (such as asserting the defense that such reimbursement

only issue before this Court is what entity has an obligation to pay the overpayment liabilities as between Nurses Registry and Options, and, as the Court previously instructed in its Opinion, Defendant will be unjustly enriched if Options is forced to pay liabilities that it did not incur. [D.E. 111 at 31]. As such, the Court will not reconsider its ruling that Defendant has been unjustly enriched relating to CMS's Medicare reimbursement requests.

### V. Nurses Registry's request for reconsideration of the Court's use of the term "unnecessary services."

In the Court's Memorandum Opinion and Order [D.E. 111], the Court stated in the factual background section of the opinion that the "Center for Medicare ("CMS") determined that some of Nurses Registry's billed services were unnecessary" and "sought to re-claim money from its previous payments for the unnecessary services." [D.E. 111 at 6]. This phrase was not a factual finding upon which the Court based its opinion, but, rather, was simply the Court's interpretation of the Medicare process.

Defendant filed a separate motion asking this Court to reconsider its use of the term "unnecessary services." [D.E. 118]. Defendant points out that in this instance, CMS was not seeking to claw back the Medicare overpayments

---

demands are unjust since the services were actually performed)." [D.E. 90 at 14].

13

because of a determination that the services provided by Defendant under Options' Medicare license were unnecessary. Rather, the parties agree that because the change-of-ownership ("CHOW") application transferring Options' Medicare license to Defendant was denied due to a change in the law, CMS refused to allow Defendant to submit a final bill verifying that it actually rendered the services that it provided under Options' Medicare license.

This mistake in terminology by the Court arises "from oversight or omission," and the Court may therefore correct the mistake pursuant to Federal Rule of Civil Procedure 60(a). Fed. R. Civ. P. 60(a); *see also In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002) (quoting *Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 689 (11th Cir. 1987)) (Explaining that, while a district court cannot change its mind under Rule 60(a), it is free to correct clerical mistakes or oversights necessary to make the "record speak the truth"). Thus, in the contemporaneously-filed Amended Memorandum Opinion and Order, the Court has modified the language on page six of its opinion to read as follows:

> When the CHOW was denied due to the 36-month rule, the Center for Medicare ("CMS") refused to allow Nurses Registry to submit a final bill verifying that it actually rendered the provided services under Options' Medicare license. [D.E. 1 at 10]. Therefore, CMS disallowed some of Nurses Registry's reimbursements billed under Options' provider number,

14

and now seeks repayment for those services. [D.E. 1 at 10]. Because Nurses Registry had been operating under Options' provider number during the relevant time period, the collection demands from CMS are addressed to Options directly, but were originally sent to Nurses Registry. [D.E. 86-5].

Accordingly, Defendant's motion to reconsider the term "unnecessary services" is granted.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

(1) Defendant's Motion to Reconsider the Court's Use of the Term "Unnecessary Services" [D.E. 118] is **GRANTED**;

(2) Defendant's Motion to Reconsider Various Rulings [D.E. 119] is **GRANTED IN PART AND DENIED IN PART**;

(3) Consequently, the Court hereby **AMENDS** the Memorandum Opinion and Order [D.E. 111] entered on May 6, 2013, in accordance with, and as described in, the Amended Memorandum Opinion and Order entered on this date.

This the 24th day of May, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

15